FILED

2013 Jan-10  PM 02:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLEN TRAINER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 2:11-cv-00057-WMA |
| | } | |
| SUPREME BEVERAGE COMPANY, | } | |
| INC., | } | |
| | } | |
| Defendant. | } | |
| | } | |

**<u>MEMORANDUM OPINION</u>**

As will hereinafter become apparent, the above-styled case
bears little similarity to *Collins v. Supreme Beverage Co., Inc.*,
CV 11-0058-AR, a case in which this court recently denied the
motion of defendant Supreme Beverage Company, Inc's ("SBC") for
summary judgment.  The only real similarity between the two cases
is that the plaintiffs in both cases are black and are former SBC
employees who complain of racial discrimination.

Before the court in the above-styled case is SBC's motion for
summary judgment, as it did in CV 11-0058-AR, seeking dismissal of
the action.  (Doc. 24).  Plaintiff Allen Trainer ("Trainer"), a
black male, claims that SBC violated 42 U.S.C. § 1981 ("§ 1981")
and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et
seq.* ("Title VII"), and retaliated against him in violation of
Title VII.  Trainer includes "cookie cutter" state law claims for
intentional infliction of emotional distress and negligent hiring,
supervision, training, and negligent  retention.  For the reasons

set forth below, SBC's motion for summary judgment will be granted.

On October 1, 2012, this court entered an order granting SBC's motion to strike portions of Trainer's response filed in opposition to SBC's motion for summary judgment. (Doc. 37). Trainer did not oppose SBC's said motion to strike, which was clearly due to be granted. For Rule 56 purposes, the court will only consider the portions of Trainer's brief that have not been stricken and that are supported by admissible evidence.

## BACKGROUND[1]

SBC, located in Birmingham, Alabama, is a wholesale beverage distributor that sells beverages, primarily beer and Red Bull, to restaurants and retail outlets. In June 2006, Trainer interviewed for a job at SBC with Mike Windham ("Windham"), SBC's Operations Manager, and James Collins ("Collins"), SBC's Delivery Manager. Windham is white. Collins is black. Collins was and is the plaintiff in CV 11-0058-AR. On June 5, 2006, SBC hired Trainer as a back-up driver at the rate of $525.00 per week. While working at SBC, Trainer reported to Windham and Collins. During his employment, Trainer's job changed, and he became a side-bay driver and then later a bulk delivery driver. Trainer asked Windham to be moved to a bulk delivery position, and Windham moved him to that position. On November 30, 2006, Windham approved a merit increase

---

[1] Based on the procedural posture of this case, all facts and their reasonable inferences are viewed in the light most favorable to Trainer.

for Trainer from $525.00 per week to $550.00 per week.

**Reprimand, Suspension, and Termination**

On the evening of December 4, 2006, Trainer celebrated too much at his birthday party.  The next day, Trainer called Windham and told him that he was not going to be able to come to work. Trainer contends that he did not tell Windham why he was not coming to work.  On December 11, 2006 Windham met with Trainer and gave him a written reprimand that stated: "Allen Trainer said he celebrated his birthday too much and could not come to work because be celebrated too much."  Windham did not treat this an excused absence.  Trainer has offered no evidence of a policy by SBC to give an employee an excused absence on his birthday.

On May 25, 2007, one of Trainer's customers cut several cases of beer from its order.  Trainer left the excess beer at the customer's store and told the SBC salesperson on the account to pick it up.  Trainer says he believed that the excess was the salesperson's fault.  Collins told Trainer that he needed to go back and get the excess beer or that his paycheck would be docked for the value of the beer he left at the store.  Trainer went back to the store, picked up the beer, and brought it back to SBC.  He then left work without delivering product to the remainder of his route.  According to Trainer, he did not have time to complete his deliveries because he had to pick up his son from school.  On May 25, 2007, Windham suspended Trainer for three days for

3

"insubordination" and "substandard work quality" based on this
incident.

On the morning of June 8, 2007, Buster Tate ("Tate"), SBC's
Warehouse Manager, filled in for Collins, counting out deliveries
and dispatching delivery trucks.  Tate, like Trainer and Collins,
is black.  Trainer complained to Tate that not all of the product
on his delivery truck was for his regular stops.  There is some
dispute as to the subsequent events, but it is undisputed that
Trainer and Tate exchanged words.  Their exchange culminated in
Tate's reporting to Windham that Trainer was refusing to deliver
his load.  Tate then asked another employee, Joe Winborn, to take
Trainer's route that day.

When Tate reported Trainer to Windham for refusing to deliver
his load, Windham asked Tate what he should do.  Tate told Windham
that they "might as well just let [Trainer] go."  Trainer was
terminated that same day, June 8, 2007.  Trainer contends that he
was not given a reason for his termination.  SBC asserts that
Trainer was terminated for "violation of policies/procedures"
because he failed to do his job.

**Trainer's Complaints of Racial Discrimination and Retaliation**

Trainer testified that he complained to his supervisor, Mike
Windham ("Windham"), in December 2006 about race discrimination and
that unfair loads and routes were assigned to the black drivers.
He further testified that on June 1, 2007, he submitted a written

4

complaint regarding discrimination that he had been subjected to while working at SBC.

Although of little relevance, before working at SBC, Trainer worked at Adams Produce, Piggly Wiggly, United Trophy, Tom Williams, and Cox Pools. Trainer filed a law suit against Piggly Wiggly for wrongful termination, and filed a law suit against Cox Pools for discrimination.

## DISCUSSION

### I.   Race Discrimination Claims[2]

### Disparate Treatment

Trainer contends that he, as well as other black drivers, were treated less favorably than white drivers. Specifically, he asserts that he and other black drivers (1) received harder loads and delivery routes than white drivers; (2) were reprimanded for not coming to work while white employees were not reprimanded; (3) were required to provided documentation for absences while white employees were not; (4) were disciplined for failing to deliver their loads while white drivers returned undelivered product and were not disciplined; and (5) that black drivers that were robbed were required to pay the stolen money back while white drivers were not.

---

[2] Trainer initially asserted claims for both racial harassment and discrimination. Because Trainer has failed to address the racial harassment claim in his brief, it is deemed abandoned. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

To establish a *prima facie* case of race discrimination under Title VII[3] Trainer must show (1) that he belongs to a racial minority, (2) that he was subjected to adverse job action, (3) that SBC treated similarly situated employees outside of his classification more favorably, and (4) that he was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

There is no dispute that Trainer belongs to a protected froup under Title VII and § 1981 and that he was reprimanded, suspended, and terminated.  Trainer, however, has presented no evidence that any of these actions was based on his race or manifested a policy of disparate treatment of blacks.  Without any evidence of such disparate treatment, Trainer's claim for racial discrimination must fail.

### Delivery Loads and Routes

Trainer contends that he and other black drivers were assigned "worse" loads and delivery routes than white drivers.  Trainer has presented no evidence whatsoever to support this claim.  To the contrary, it is undisputed that Trainer worked on a bulk delivery

---

[3] Title VII and § 1981 race discrimination claims are analyzed using the same analytical framework.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, the court will explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.

route, which he admits is "easier" than other routes.  He explained that the worse routes are those in areas where the driver is likely to be robbed.  It is undisputed that white drivers also had routes in these "bad" neighborhoods and had been robbed and that Trainer was never robbed while working for SBC.

### Reprimanded for Absenteeism

Trainer also contends that he was reprimanded for not coming to work while white employees would be absent from work without consequence.  Trainer, however, admits that he has no personal knowledge of why other employees were absent or whether or not they were reprimanded for their absenteeism.  Trainer has offered no evidence to support this contention.  In fact, it is undisputed that two white employees, James Thornton ("Thornton") and Chris Phelps ("Phelps"), were both disciplined, and that Phelps was ultimately terminated for his absenteeism.

### Required Documentation for Absenteeism

Trainer contends that he was required to provide documentation for his absences while white employees were not.  Again, Trainer admits that he has no personal knowledge of other employees being required to provide documentation for absences.

### Failure to Deliver Loads

Trainer also contends that he was disciplined for failing to deliver his load, but SBC did not discipline white employees who returned undelivered product.  Again, Trainer admits he has no

personal knowledge upon which to base this assertion.  Furthermore, it is undisputed that Thornton, a white employee, was terminated precisely for failing to deliver his assigned load.

### Black Drivers Who Were Robbed Were Required to Pay the Money Back

Trainer next contends that SBC required black drivers who were robbed to reimburse the company, but did not require white drivers to do the same.  There is no evidence to support this assertion.  Furthermore, it is undisputed that SBC required both Freddie Gaines, a black driver, and Thornton, a white driver, to reimburse SBC after having been robbed.

### Discriminatory Termination

Trainer next contends that he was discharged because of his race.  In the absence of direct evidence of discrimination, a plaintiff depending upon circumstantial evidence under Title VII and § 1981, as Trainer does here, must rely on the burden-shifting framework set forth in *Texas Department of Community Affairs v. Burdine* and *McDonald Douglas Corp. v. Green*.  450 U.S. 248, 101 S. Ct. 1089 (1981); 411 U.S. 792, 93 S. Ct. 1817 (1973).  To prevail on a claim of discriminatory termination, Trainer must show that "(1) he is a member of protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside of his protected class." *Maynard v. Bd. of Regents*, 342 F.2d 1281,

8

1289 (11th Cir. 2003).

SBC does not dispute that Trainer has satisfied the first three elements of his discriminatory termination claim.  Instead, SBC points out that Trainer has failed to show that he was he was not replaced by someone outside of his protected class and because he cannot show that any similarly situated person outside of his protected class engaged in substantially the same conduct, but was not terminated.

It is undisputed that Trainer was replaced by a black driver. *See Hawkins v. CeCo Corp.*, 883 F.2d 977, 984 (11th Cir. 1989) ("Because [the plaintiff] did not meet the fourth requirement of showing he was replaced by a white, he failed to establish a *prima facie* case."); *see also Coleman v. Braniff Airways, Inc.*, 664 F.2d 1282 (5th Cir. 1982).  Neither has Trainer shown that a similarly situated employee outside of his protected class received more favorable treatment.  Specifically, Trainer has failed to present any evidence that a white employee got into an argument with his manager and refused to deliver his load and was not terminated.  In fact, it is undisputed that Thornton, the white employee whom Trainer contends was treated differently, was terminated by SBC for failure to deliver his load.  *See Jones v. Bessemer Caraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998) ("If a plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably, [his] case must fail because the burden is

on [him] to establish [his] prima facie case."). Trainer has failed to establish a *prima facie* case for discriminatory discharge.

Even assuming that Trainer could establish a *prima facie* case of discriminatory discharge, his claim fails because SBC has articulated legitimate, non-discriminatory reasons for Trainer's discharge, and Trainer has failed to produce any evidence to suggest that SBC's reasons are a mere pretext. SBC has provided legitimate, non-discriminatory reasons for Trainer's termination, namely, insubordination and violation of company policies, both of which are legitimate, non-discriminatory reasons to terminate an employee. *See Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114 (S.D. Ala. 2000) (citing *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1361 (11th Cir. 1991)). SBC took the advice given it on June 8, 2007 by Trainer's fellow employee, who is black. Trainer has offered no evidence that SBC's proffered reasons were a pretext for discriminatory conduct.

## II. Retaliation

Title VII prohibits retaliation against an employee (1) "because he has opposed" discrimination prohibited by Title VII (the "opposition clause") or (2) "because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII (the "participation clause"). 42 U.S.C. § 2000e-3(a). Retaliation is

10

a distinct claim, and a plaintiff is not required to prove an underlying claim of a discriminatory act against him in order for the retaliation claim to succeed. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

To establish a case of retaliation under Title VII, Trainer must show that: "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Sharpe v. Global Sec. Int'l*, 766 F. Supp. 2d 1272, 1300 (S.D. Ala. 2011) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009)). Once Trainer has established a *prima facie* case of retaliation, "the burden shifts to [SBC] to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Id.* (quoting *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997)). If SBC offers legitimate reasons for the adverse employment action, the presumption of retaliation disappears. *Id.* (citing *Raney*, 120 F.3d at 1196). Trainer is then required to show that SBC's proffered reasons for taking the adverse employment action were a pretext for the prohibited retaliatory conduct. *Id.* (citing *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).

The parties agree that Trainer has satisfied the first two elements of a *prima facie* case of retaliation, namely, that he engaged in a statutorily protected expression and that he suffered

11

an adverse employment action.  Specifically, SBC does not dispute
that Trainer's December 2006 complaints to Windham and his June 1,
2007 letter were protected activities and that he suffered an
adverse employment actions when he was suspended and later
terminated.  The parties disagree, however, as to whether there is
a causal connection between Trainer's complaints and his subsequent
suspension and termination.

Before the court discusses the causation question as to the
suspension or the termination, the court notes that Trainer's
retaliation claim based on his December 11, 2006 reprimand for his
absence on December 5, 2006 is barred as untimely.  To make a claim
related to any retaliation that arguably occurred on December 11,
2006, Trainer was required to file his EEOC charge within 180 days,
a period that ended on June 9, 2007.  *See Rizo v. State of Ala.
Dept. of Human Res.*, No. 06-13261, 2007 WL 278587 at *2 (11th Cir.
Jan. 31, 2007) (citing 29 C.F.R. § 1626.7(a)).  Trainer did not
file his EEOC charge until August 29, 2007.  Any claim based on the
reprimand must be dismissed because of Trainer's non-exhaustion of
his EEOC remedy.

The causal connection element of a retaliation claim is
interpreted broadly and only requires that the plaintiff prove that
"the protected activity and the negative employment action are not
completely unrelated." *Goldsmith v. Bagby Elevator Co., Inc.*, 513
F.3d 1261, 1278 (11th Cir. 2008) (quoting *Olmsted v. Taco Bell*

*Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). Causation may be inferred by a close temporal proximity between the protected expression and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But, to be effectual mere temporal proximity, without more, must be "very close." *Byrne v. Ala. Alcoholic Beverage Control Bd.*, 635 F. Supp. 2d 1281, 1298 (M.D. Ala. 2009) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001) (per curiam)). Specifically, the Eleventh Circuit has explained that "[i]f there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation." *Henderson v. FedEx Express*, 442 Fed. Appx. 502, 506 (11th Cir. 2011) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

More than five months elapsed between Trainer's December 2006 complaints to Windham and his suspension for failing to complete his deliveries on May 25, 2007 (and even longer between the said complaints and his termination). This gap is too long to permit an inference of causal connection. *See Henderson v. FedEx Express*, 442 Fed. Appx. 502, 506 (11th Cir. 2011) ("If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation.").

The temporal gap between Trainer's June 1, 2007 written complaint and his termination on June 8, 2007 is "very close" and would make out a jury question if believed and if not interrupted by Trainer's conduct on June 8, 2007, the very day of his termination.  However, Trainer has offered no evidence to establish that the termination decisionmakers, Windham and Tate, were aware at the time he was terminated that Trainer had made a written complaint of discrimination on June 1, 2007.  Without such proof, Trainer's June 1, 2007 letter cannot be used as a triggering date. Even if it is presumed that Windham and Tate were aware of Trainer's letter, Trainer's earlier conduct on June 8, 2007 in refusing to make his deliveries breaks any possible causal link between his earlier complaints and his termination.  *See Henderson*, 442 Fed. Appx. at 506 ("Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action.").

**"A Convincing Mosaic of Circumstantial Evidence"**

In the "conclusion" section of Trainer's brief, he argues that his case is just "one piece of the puzzle of race discrimination and retaliation occurring at SBC."  He is apparently trying to connect himself to plaintiffs in other cases brought against SBC in this court, such as CV 11-0058-AR.  He says: "[t]his is precisely the 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision' (and in

14

this case retaliation as well) as allowed by *Smith v. Lockheed-Martin Corporation*, 644 F.3d 1321 (11th Cir. 2011)." Trainer falls well short of the standard established in *Lockheed-Martin*.

Like the plaintiffs in *Brown v. Berg Spiral Pipe Corp.* and *Hossain v. Steadman*, Trainer is a "few tiles short of a mosaic, let alone a convincing one." Case No. 10-237-CG-B, 2011 WL 3610646 (S.D. Ala. Aug. 17, 2011); 855 F. Supp. 2d 1307, 1316 (S.D. Ala. 2012) (quote from *Hossain*). In *Brown* the court explained the Eleventh Circuit's holding in *Lockheed-Martin*:

> [A] plaintiff could survive summary judgment despite the fact that he could not point to a comparator, because the plaintiff produced a significant evidentiary record ("convincing mosaic") that Lockheed-Martin had considered the plaintiff's race in their decision to terminate him. This evidence included (i) a spreadsheet which listed employees by name and race; (ii) a documented history of inconsistent treatment of white and African-American employees; and (iii) a television news expose covering racial tension and workplace violence at Lockheed-Martin.

*Brown*, 2011 WL 3610646 at *15. Trainer has put together no such mosaic in this case. This court cannot take judicial notice of other SBC cases that may or may not provide evidence relevant to Trainer's claims.

**III. State Law Claims**

Trainer's supplemental claims for negligent hiring, supervision, training, and negligent retention are due to be dismissed because he has not presented any evidence to establish

the necessary underlying tort that Alabama law requires for pursuing them. Under Alabama law, "[a] party alleging negligent or wanton hiring, supervision, training, and retention must prove the underlying wrongful conduct of employees." *Thornton v. Flavor House Prods., Inc.*, Case No. 1:07-cv-712-WKW, 2008 WL 5328492, at *19 (M.D. Ala. Dec. 19, 2008) (citing *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065 (Ala. 2003)). Additionally, the underlying wrongful conduct must be a "'common-law, Alabama tort' committed by the employee, not [] a federal cause of action such as Title VII." *Ellis v. Advanced Tech. Servs.*, Case No. 3:10-cv-555-WHA, 2010 WL 3526169, at *2 (M.D. Ala. Sept. 3, 2010) (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002)).

The only state law claim that Trainer has asserted that is not otherwise precluded is his claim for intentional infliction of emotional distress. Because such a claim is frowned upon in Alabama requires egregious conduct beyond what Trainer alleges, and because Trainer has not addressed any such claim in his brief, it is either deemed abandoned or must be dismissed for lack of colorable merit. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Without an underlying tort claim, Trainer cannot maintain his claims for negligent hiring, supervision, training, and negligent retention, and his termination after his argument with Tate was not so outrageous as to be

16

actionable.

**CONCLUSION**

For the foregoing reasons, SBC's motion for summary judgment will be granted.  A separate order will be entered effectuating this opinion.

DONE this 10th day of January, 2013.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE